## FOR PUBLICATION



FILED
Jul 03 2013, 6:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEION GADDIE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-953 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Shatrese Flowers, Commissioner
Cause No. 49F19-1208-CM-53729

**July 3, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Keion Gaddie appeals his conviction, following a bench trial, of resisting law enforcement, a Class A misdemeanor. Gaddie raises the following issue for our review: whether the evidence was insufficient to sustain his conviction because he was free to disregard law enforcement in what was a consensual encounter. Concluding that Gaddie had no duty to stop when law enforcement ordered him to do so, we reverse.

## Facts and Procedural History

On August 4, 2012, Indianapolis Metropolitan Police Officer Jeffrey Newlin responded to a report of a disturbance at a residence on 10th Street. When he arrived, he saw six to eight people standing on the front porch and in the front yard, yelling and screaming. He saw several other people, one of whom was Gaddie, walking on the side of the residence towards the back. He tried to "corral" everyone to the front yard to keep an eye on them. Transcript at 8. Everyone went to the front yard, except for Gaddie, who was walking towards an alley. When back-up arrived, Officer Newlin headed toward the back, told Gaddie he was a police officer, and ordered him to stop. Gaddie was approximately forty-five to fifty-five feet away from Officer Newlin and continued walking. Officer Newlin followed him and repeated his order to stop; Gaddie looked back at him two or three times but did not stop. Another police officer intercepted Gaddie the next street over approximately thirty-five to forty-five seconds later.

Gaddie was charged with resisting law enforcement, a Class A misdemeanor. At the bench trial, Officer Newlin testified that he was corralling people in the front yard for the

2

purpose of "Officer safety and for their safety." Id. at 17. He further testified that he had not seen Gaddie or anyone else commit a crime prior to ordering him to stop nor was Gaddie under arrest when he ordered him to stop. The court found Gaddie guilty as charged and ordered him to perform forty-eight hours of community service work. Gaddie now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

Our standard of review for sufficiency claims is well-settled. We do not reweigh the evidence or assess witness credibility for ourselves. Boggs v. State, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), trans. denied. We consider only the probative evidence and reasonable inferences supporting the verdict. Id. We will affirm the conviction unless no reasonable finder of fact could find the elements of a crime proven beyond a reasonable doubt. Id.

### II. Fleeing from Law Enforcement

Gaddie was convicted of resisting law enforcement in violation of Indiana Code section 35-44.1-3-1(a)(3). The State was required to prove beyond a reasonable doubt that Gaddie did knowingly or intentionally flee from Officer Newlin after he had identified himself and ordered Gaddie to stop. See id. Gaddie argues that the evidence was insufficient to sustain his conviction because he had no duty to stop in what was a consensual encounter.[1]

---

[1] The State claims that the level of police investigation is irrelevant, in part, because Gaddie does not raise a challenge to the admissibility of the evidence. However, Gaddie's argument regarding whether there was sufficient evidence to sustain his conviction encompasses the issue of the level of police investigation.

Gaddie relies upon the cases of Bovie v. State, 760 N.E.2d 1195 (Ind. Ct. App. 2002), and Briggs v. State, 873 N.E.2d 129 (Ind. Ct. App. 2007), trans. denied. In Bovie, the trial court found that the defendant violated his probation, in part, by resisting law enforcement in violation of a statutory provision analogous to the one Gaddie was convicted of violating here.[2] 760 N.E.2d at 1196-97. A panel of this court stated that "before an individual may actually resist law enforcement by fleeing, the individual must have a duty to stop." Id. at 1197. The court further noted that:

> [i]n a consensual encounter, the individual remains free to disregard the police officer and to walk away. Only when an individual no longer remains free to leave does an investigatory stop begin. It follows that [the defendant] could be found guilty of resisting law enforcement only if he was the subject of an otherwise legal stop.

Id. at 1198 (citations omitted). The police officer had witnessed the defendant and his passenger, a known drug user and seller, leave a known drug house, go to a gas station, and stop their car. Id. The court concluded that while the officer may have had a "'hunch' that something was amiss," this was not sufficient to constitute reasonable suspicion that the defendant was engaged in criminal activity. Id. Because of the lack of reasonable suspicion or statutory authority to make a stop, this court held that the defendant was subject to an unlawful stop and was therefore not guilty of resisting law enforcement. See id. at 1198-99.

In Briggs, the defendant was convicted of resisting law enforcement for knowingly or intentionally resisting a law enforcement officer while the officer was lawfully engaged in the execution of his duties. 873 N.E.2d at 131-32. In that case, after the defendant allowed

---

[2] In Bovie, however, the standard of proof was the lower burden of preponderance of the evidence

4

law enforcement to enter his home to provide stand-by assistance to his former roommate as he retrieved his belongings, he walked towards the back room. Id. at 131. Police asked him to stop but he did not comply. Id. A panel of this court held that because the defendant was not under arrest, in custody, or under suspicion for a crime, the encounter was consensual and the defendant "remained free to disregard the officers, walk away, or even order them to leave his home." Id. at 133. The court concluded that even though the officer may have had a hunch that the defendant could have a weapon in his bedroom, his detention was an unreasonable seizure in violation of the Fourth Amendment and therefore the evidence was insufficient to sustain his conviction. Id. at 133-34.

There are two schools of thought on the issue of whether a person must obey an unlawful order to stop from a police officer. In Corbin v. State, a panel of this court held that "evidence of flight following a police officer's order to stop is admissible in a prosecution for resisting law enforcement regardless of the lawfulness of the order." 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991). A number of cases have subsequently cited to this rule. See, e.g., Dandridge v. State, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004), trans. denied; State v. Howell, 782 N.E.2d 1066, 1067 (Ind. Ct. App. 2003). The court in Corbin based its decision in part on the language of the statute, which does not condition the offense upon a lawful order. 568 N.E.2d at 1065. The court further stated there was no Fourth Amendment issue because the defendant's "flight was in response to an order to stop; in fact he never stopped and nothing

---

because it was a probation revocation case. 760 N.E.2d at 1197.

was seized from him." Id. In a footnote, the court noted that the "remedy, if any, is with the civil law." Id. at 1065 n.2.

While the statutory provision under which Gaddie was convicted does not condition the offense upon a lawful order, the statutory language is not the end of the story. Another provision of the statute which defines resisting law enforcement as forcibly resisting, obstructing or interfering with a law enforcement officer does condition the offense upon the officer being "lawfully engaged in the execution of [his or her] duties," see Ind. Code § 35-44.1-3-1(a)(1),[3] and yet the Indiana Supreme Court has stated that even if an arrest is invalid, resisting is an independent offense, Row v. Holt, 864 N.E.2d 1011, 1017 (Ind. 2007). The reasoning behind this rule is that allowing a person to forcibly resist an unlawful arrest "would effectively encourage rather than inhibit violence during arrests." Dora v. State, 783 N.E.2d 322, 327 (Ind. Ct. App. 2003), trans. denied. This rationale does not apply to the situation where a person merely walks away and does not obey a command to stop.

More importantly, we disagree that a conviction under this statutory provision does not have Fourth Amendment implications. The United States Supreme Court has stated that "a person is 'seized' . . . when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 553 (1980). To hold that Gaddie should have stopped immediately upon being ordered to do so by Officer Newlin or else face a criminal conviction would mean that a seizure took place under the Fourth Amendment. A seizure requires, at the minimum, a reasonable suspicion of

---

[3] The defendant in Briggs was convicted under this statutory provision.

criminal activity based on specific and articulable facts. See id. at 554. The Fourth

Amendment is not implicated in what is termed a "consensual encounter," see Overstreet v.

State, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), trans. denied, where "the person to whom

questions are put remains free to disregard the questions and walk away," Mendenhall, 446

U.S. at 554. To agree with the rationale in Corbin would effectively render the consensual

encounter nonexistent in the state of Indiana. However, "[t]he purpose of the Fourth

Amendment is not to eliminate all contact between the police and the citizenry, but to prevent

arbitrary and oppressive interference by enforcement officials with the privacy and personal

security of individuals." Mendenhall, 446 U.S. at 553-54 (quotes and citation omitted).

Thus, we hold that as long as a seizure has not taken place within the meaning of the Fourth

Amendment, a person is free to disregard a police officer's order to stop and cannot be

convicted of resisting law enforcement for fleeing.

The State argues there was reasonable suspicion to conduct an investigatory stop here.

We disagree. We first note that the lower standard of reasonable suspicion, as opposed to

probable cause, only applies to cases involving a brief encounter between a citizen and a law

enforcement officer on a public street. State v. Atkins, 834 N.E.2d 1028, 1033 (Ind. Ct. App.

2005), trans. denied. Here, Gaddie was at his own residence and not on a public street.

However, we will address the parties' arguments regarding whether this was an investigatory

stop. The State contends that the encounter was an investigatory stop because Officer

Newlin was responding to a report of a disturbance. However, a report of a disturbance

without more is not a sufficient basis upon which to conduct an investigatory stop. See, e.g.,

7

id. at 1034 (holding there was no reasonable suspicion which would justify an investigatory stop despite report of a domestic disturbance). Moreover, Gaddie was not standing with the group of people who were yelling and screaming in the front of the home. Instead, he was walking on the side of his home towards the back yard. Officer Newlin testified that he had not observed Gaddie or anyone else commit a crime and he did not state that Gaddie was under any suspicion of having done so. Officer Newlin testified that he was corralling everyone into the front yard for officer safety and their safety. But while "[o]fficer safety is always a legitimate concern, . . . standing alone [it] cannot form the basis for a valid investigatory stop." Id. at 1033. In addition, it appears that the safety concern was merely speculative and there is no evidence that Gaddie walking away posed a safety risk to law enforcement. See Williams v. State, 959 N.E.2d 357, 359 (Ind. Ct. App. 2011) (distinguishing the case from Briggs because of a greater safety risk to police where the police were outnumbered, violence had erupted once, and the defendant was not "merely walk[ing] away from the police, as Briggs did, but was actively interfering with the officers' investigation"), trans. denied. Because there was no reasonable suspicion, let alone probable cause, which would justify a seizure of Gaddie, he was subject to an unlawful stop and thus his conviction for resisting law enforcement is reversed for insufficient evidence.

## Conclusion

Gaddie was under no duty to stop when Officer Newlin ordered him to do so. Moreover, there was no reasonable suspicion which would justify a seizure of Gaddie. Thus, his conviction for resisting law enforcement is reversed.

8

Reversed.

FRIEDLANDER, J., and CRONE, J., concur.